**Victor SHEHATA, Appellant,**

v.

**SALVATION ARMY and Northern Adjusters, Appellees.**

No. S–12940.

Supreme Court of Alaska.

March 12, 2010.

---

**47.** *Id.*

**48.** *State v. Weidner,* 684 P.2d 103, 114 (Alaska 1984).

Phillip J. Eide and Laura S. Gould, Eide & Gingras, P.C., Anchorage, for Appellant.

Colby J. Smith and Krista M. Schwarting, Griffin & Smith, Anchorage, for Appellees.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

This appeal concerns reimbursement for fraudulent receipt of workers' compensation benefits. An employee worked part-time for five weeks while he was receiving workers' compensation benefits for a shoulder injury but did not inform his former employer that he was working. On his last day at the part-time job, the employee untruthfully told the workers' compensation claims adjuster that he was not working. The Alaska Workers' Compensation Board ordered the employee to reimburse his employer for workers' compensation benefits he received during the entire time he was working, finding that he obtained benefits fraudulently by telling the adjuster that he was not working. The board assessed over $14,000 in attorney's fees against him as well. The Alaska Workers' Compensation Appeals Commission affirmed the board rulings. In a separate decision, the commission ordered the employee to pay an additional $5,270 in attorney's fees to the employer, finding that his appeal was frivolous or unreasonable. We conclude that the workers' compensation fraud statute requires a causal link between a false statement and the benefits obtained; here, cause is lacking for any benefits paid before the

false statement. We therefore reverse the order for reimbursement of benefits paid before the date of the statement. We affirm the order requiring repayment of one week of benefits. Finally, we conclude that the employee's appeal was not frivolous and reverse the commission's decision awarding attorney's fees for the appeal.

## II. FACTS AND PROCEEDINGS

Victor Shehata injured his shoulder at his job for the Salvation Army in December 2003. The Salvation Army accepted the compensability of the injury and initially paid medical benefits. Shehata had shoulder surgery in July 2005. He received temporary total disability (TTD) benefits from February 1, 2005 through April 7, 2006.[1] He also got a lump sum permanent partial impairment (PPI) payment in April 2006.

In September 2005 Shehata began to work part-time at Totem Equipment & Supply, Inc. doing clerical work. According to Shehata, he decided to try to work at Totem after the owner, who was a friend of his, asked for his help. Shehata earned about $280 a week from Totem; he also received $411.95 a week in TTD benefits from the Salvation Army. He did not inform the Salvation Army or the insurance adjuster that he was working part-time.

In early October 2005, the Salvation Army hired an investigator to follow Shehata. According to the insurance adjuster, she hired the investigator because the Salvation Army was considering an offer of light duty work to Shehata and she wanted information about his physical capacity as she had noticed references to refereeing soccer in Shehata's medical records. The investigation indicated that Shehata was working at Totem. The adjuster testified that she knew by October 14, 2005, that Shehata was working part-time. That day, the adjuster taped part of a telephone conversation she had with Shehata. In the call, she said, "as I understand it, you're not actually working?" Shehata answered, "No." At the time he was talking to

---

1. Shehata left his job at the Salvation Army and got unemployment benefits before he started getting TTD benefits. There was a three to four month gap between the time Shehata stopped getting unemployment benefits and started getting TTD benefits.

the adjuster, Shehata was standing outside Totem's office, being videotaped by the investigator. Shehata's last day of work with Totem was October 14, 2005. On October 17, 2005, the adjuster again talked to Shehata on the phone and recorded the call. Their conversation contained the following exchange:

[Adjuster]: ... we just have to know whether you're earning wages, whether you're earning ...

[Shehata]: Oh, no, no, no, no. I don't earn no wages, I don't get no unemployment. I don't get no Social Security [ ] Disability, I think that's what you're saying, or otherwise.

Earlier in the conversation, Shehata affirmed that he had told her in the previous conversation that he was not working, but was looking for work.

The Salvation Army confirmed Shehata's employment with Totem in mid-November. It filed a notice of controversion on November 30, 2005, controverting Shehata's receipt of TTD benefits from September 12, 2005 through October 15, 2005. It continued to pay Shehata TTD benefits until April 6, 2006, without withholding the TTD benefits it had controverted in November.

The Salvation Army sent Shehata written discovery requests related to his employment on December 13, 2005. Two days later it sent a notice that it planned to take Shehata's deposition on January 6, 2006. Shehata and his attorney appeared at the scheduled deposition. At the deposition, the Salvation Army's attorney indicated that Shehata's attorney had told him that Shehata would not contest the controversion. Shehata's attorney confirmed this and said that Shehata was "prepared to submit information with respect to what his earnings were during the time of controversion." He also stated that Shehata's work "may result in no TTD benefits, it might result in [temporary partial disability]

2. Shehata had heart surgery in 2005.

3. Based on his compensation rate, Shehata received $2,059.75 in TTD benefits during the time he worked at Totem.

4. The Salvation Army had not yet noticed another deposition but was asking for an order compelling one because Shehata took the position that he should not be subject to a deposition

benefits, but it's not going to be a claim on our part." Shehata's attorney said that Shehata would "prefer not to go through the questioning" of a deposition because of health concerns,[2] that he would give written responses to the Salvation Army and "then hopefully resolve this claim down the road." The Salvation Army noted for the record that Shehata was also unwilling to participate in the deposition because he had not filed a claim; it then cancelled the deposition. Shehata answered the Salvation Army's written discovery requests on January 10, 2006. He described his work at Totem and supplied copies of his check stubs from Totem.

On April 7, 2006, a physician evaluated Shehata on behalf of the Salvation Army. The physician reported that in his opinion Shehata had reached medical stability and had a nine percent whole person permanent partial impairment (PPI) rating. Based on this report, the Salvation Army controverted Shehata's eligibility for continuing TTD benefits, and on April 24, 2006, it paid Shehata $15,930 as a lump sum PPI benefit, again without withholding the TTD benefits it had paid while Shehata was working at Totem.[3]

On June 27, 2006, the Salvation Army filed a petition to compel Shehata to attend a deposition.[4] On July 24, 2006, the Salvation Army filed a petition for reimbursement under AS 23.30.250(b), which authorizes the board to order repayment of fraudulently obtained workers' compensation benefits. In its petition, the Salvation Army asked for "full reimbursement for temporary total disability benefits paid from September 21, 2005 through October 15, 2005 and all reasonable costs and attorney's fees incurred in obtaining these benefits." It also noted difficulties in obtaining discovery and stated that its claim for reimbursement might "be amended

because no claim had been filed. Board decisions hold that an employer cannot take an employee's discovery deposition unless a claim or controversion has been filed. See *Arline v. Evergreen Int'l Aviation*, AWCB Decision No. 98–0221 at 8–11 (August 24, 1998); *Cates v. Real Estate Servs.*, AWCB Decision No. 03–0145 (June 24, 2003) (reaffirming *Arline*).

after the appropriate discovery occurs."[5] On the same day, it filed a separate petition requesting that the board compel Shehata to sign tax and employment releases.

Shehata answered the petition for reimbursement by admitting that he had worked part-time from September 12, 2005 through October 15, 2005. He also answered that the Salvation Army had been advised as early as January 2006 that he would not contest controversion of TTD benefits for that period, so that the Salvation Army was "entitled to adjust Mr. Shehata's benefits to Temporary Partial Disability benefits for the relevant time period." Shehata declared that the petition for reimbursement was unnecessary because the Salvation Army could recover any overpayment through an offset of future compensation. He asked that the board deny the petition. Shehata also answered the petition to compel him to attend a deposition, noting that because he had not contested the controversion of TTD benefits or filed a written claim, he disputed whether he could be made to testify at a deposition. He additionally opposed the employer's request that he sign tax and employment releases because he had already produced wage information for the period of time relevant to the employer's petition.

Shehata's attorney did not appear at the prehearing conference related to the discovery petitions.[6] The prehearing conference officer granted the employer's requests for discovery. Shehata's deposition was held on September 27, 2006. At the deposition, Shehata admitted that he made a misrepresentation to the adjuster when he talked to her on October 14, 2005.

The board held a hearing on the Salvation Army's petition for reimbursement on November 15, 2006. Shehata and the insurance adjuster testified. Shehata testified about his work at Totem and his statements to the adjuster. He testified that he was unaware that he was committing fraud when he told the adjuster in October 2005 he was not

working; he said that he was trying to see if he could go back to work and that he did not think about workers' compensation when he went back to work.

The adjuster testified about the conversations she recorded in October 2005 and explained why she hired an investigator to follow Shehata. She also discussed the reasons she did not immediately file a notice of controversion and did not simply withhold benefits after the November 2005 controversion was filed. According to the adjuster, when she filed a controversion based on surveillance in another case, it had not turned out well, so she wanted more confirming information before she filed. She also testified that she did not withhold benefits because there was never a firm agreement about how much had been overpaid. She acknowledged that part of her job is to help explain benefits to employees, but said that she did not tell Shehata that he could work part-time and possibly get benefits because he did not admit working.

In its April 2007 decision the board granted the employer's petition. In its decision, the board construed AS 23.30.250(b) "to authorize forfeiture and reimbursement of only those benefits resulting from intentional false or misleading statements or representations." In making findings, the board decided first that Shehata was not eligible for TTD benefits effective September 12, 2005, when he began to work part-time for Totem, because he was able to return to work. It determined that Shehata had "misrepresented his ability to work" on October 14, 2005, and October 17, 2005, when he spoke with the adjuster. It further found that Shehata "systematically attempted to mislead the employer concerning his ability to work from September 12, 2005 to October 15, 2005." It also ordered Shehata to pay $14,567.05 for attorney's fees and costs "in obtaining this order."

Shehata appealed to the appeals commission. Before the commission, he argued that

---

5. The Salvation Army later filed a second petition asking for reimbursement for a different period of time. The second petition is not part of this appeal.

6. The attorney told the board at a later hearing that he missed the prehearing conference because he went out of town "prematurely" because of a birth in his family and the prehearing "fell between the cracks" at his office.

(1) the board order was incorrect as a matter of law; (2) the Salvation Army had waived its right to recover the money; and (3) the attorney's fees award was unreasonable because the employer had engaged in unnecessary litigation. In his appeals commission brief, Shehata set out the elements of the tort of misrepresentation and argued that the Salvation Army had not met its burden of proving all of the elements of misrepresentation. He also argued that the Salvation Army had not shown that he had received any benefits as a result of the misrepresentation because the adjuster knew that Shehata was lying when she recorded him on October 14, before she authorized his TTD check for the week of October 10, 2005. Shehata asserted that the Salvation Army implicitly waived its right to request reimbursement by continuing to pay him TTD and PPI benefits after he told it that he would not contest its controversion of benefits. Alternatively, he argued that a reimbursement order under subsection .250(b) was inappropriate because the Salvation Army had not proven all of the elements of fraud; without a determination of fraud, the only possible recovery of an overpayment was using the offset provision of AS 23.30.155(j).[7] Finally, he argued that the attorney's fees awarded by the board were not necessary because he had told the Salvation Army in January 2006 that he would not be contesting the November 2005 controversion of TTD benefits. It thus could have recovered the overpayment through an offset without incurring significant attorney's fees.

The appeals commission affirmed the board. The commission decision set out the elements of fraud under subsection .250(b) that this court adopted in *Municipality of Anchorage v. Devon*[8] and decided that substantial evidence in the record supported the board's decision that Shehata had committed fraud. In discussing Shehata's argument that reliance was necessary to show fraud under subsection .250(b), the commission construed "representation" in the statute to include silence: it stated, "[A]n employee's knowing misrepresentation through silence in the face of an affirmative obligation to disclose information that would affect a right to compensation may result in obtaining benefits because the employer is obligated to continue payment in the absence of evidence." The commission decided that "Shehata's false statements and concealment of his work status, when he had an affirmative duty to disclose it" could support a finding that Shehata received benefits as a result of his misrepresentation.

The commission interpreted Shehata's waiver argument as an argument that an employer must use the offset provision to recover benefits and rejected it, finding that the employer was entitled to use the fraud section of the statute to recoup benefits "when the overpayment is the result of the employee's false statements or misrepresentations." It went on to hold that substantial evidence in the record supported the board's findings. It stated:

> [W]e find that the evidence relied on by the board was sufficient to allow a reasonable mind to conclude that Shehata knowingly concealed his job at Totem, knowingly lied to Wentworth about his ability to work and earnings, and that he did so in order to delay, if not prevent, the discovery of his ability to work and to continue to receive compensation or avoid having to repay the compensation he received while employed.

It also upheld the board's award of attorney's fees as reasonable, noting that "some ... of the fees claimed were attributable to Shehata's hindrance of Salvation Army's investigation and opposition to the petition for a reimbursement order."

After the commission affirmed the board decision, the Salvation Army asked the commission to award it attorney's fees and costs incurred in the appeal. The commission awarded fees of $5,270 in a divided decision.

---

7. AS 23.30.155(j) permits an employer to withhold up to twenty percent of unpaid installments of compensation when it has overpaid compensation; withholding of more than twenty percent is permitted with board approval.

8. 124 P.3d 424, 429 (Alaska 2005). Although the board mentioned *Devon* in its decision, it did not make findings about each element set out in *Devon*.

Two commissioners decided that an award of fees was appropriate either because the appeal was frivolous or because Shehata was not an injured worker. The commission chair dissented and would not have awarded fees for the appeal.

Shehata appeals both commission decisions.

## III. STANDARD OF REVIEW

▉ In workers' compensation appeals from the appeals commission, we review the commission's decision and apply our independent judgment when there is a question of law that does not involve agency expertise.[9] We independently review factual findings made by the board to see whether they are supported by substantial evidence in light of the whole record.[10] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[11] We review awards of attorney's fees for an abuse of discretion.[12] An abuse of discretion "exists if the award is 'arbitrary, capricious, manifestly unreasonable, or improperly motivated.' "[13]

## IV. DISCUSSION

### A. A Causal Relationship Must Exist Between the False Statement and Obtaining Benefits.

In this appeal, Shehata reiterates his argument that the Salvation Army must show justifiable reliance on his false statement before he can be made to repay benefits pursuant to AS 23.30.250(b). He relies on *Seybert v. Cominco Alaska Exploration*[14] to support his contention that justifiable reliance is an element of misrepresentation in workers' compensation cases. He asserts that the Salvation Army cannot have justifiably relied

on his false statement because it knew that the statement was false when he made it. Shehata also argues that the statute and case law require a causal connection between his statement and the TTD benefits, yet the Salvation Army never showed that he obtained benefits as a result of the misrepresentation. The Salvation Army asks us to uphold the commission's decision, contending that the commission applied the correct legal standard. The Salvation Army argues that Shehata is trying to add a non-existent element to a fraud claim under subsection .250(b).

Alaska Statute 23.30.250(b) permits the board to order reimbursement of fraudulently obtained workers' compensation benefits in some circumstances. At the time of Shehata's injury, subsection .250(b) provided:

If the board, after a hearing, finds that a person has obtained compensation, medical treatment, or another benefit provided under this chapter, by knowingly making a false or misleading statement or representation for the purpose of obtaining that benefit, the board shall order that person to make full reimbursement of the cost of all benefits obtained. Upon entry of an order authorized under this subsection, the board shall also order that person to pay all reasonable costs and attorney fees incurred by the employer and the employer's carrier in obtaining an order under this section and in defending any claim made for benefits under this chapter. If a person fails to comply with an order of the board requiring reimbursement of compensation and payment of costs and attorney fees, the employer may declare the person in default and proceed to collect any sum due as provided under AS 23.30.170(b) and (c).[15]

**9.** *Barrington v. Alaska Commc'ns Sys. Group, Inc.*, 198 P.3d 1122, 1125 (Alaska 2008).

**10.** *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009).

**11.** *Circle De Lumber Co. v. Humphrey*, 130 P.3d 941, 946 (Alaska 2006) (quoting *Robertson v. Am. Mech., Inc.*, 54 P.3d 777, 779 (Alaska 2002)).

**12.** *Crawford & Co. v. Vienna*, 744 P.2d 1175, 1178 n. 3 (Alaska 1987). *See also Alaska Wildlife Alliance v. State*, 74 P.3d 201, 205 (Alaska 2003)

(applying abuse of discretion standard to Rule 82 attorney's fees award).

**13.** *Rhodes v. Erion*, 189 P.3d 1051, 1053 (Alaska 2008) (quoting *Kellis v. Crites*, 20 P.3d 1112, 1113 (Alaska 2001)).

**14.** 182 P.3d 1079 (Alaska 2008).

**15.** Former AS 23.30.250(b). The 2005 amendments to the workers' compensation statute made a slight revision to subsection .250(b) that

In *Municipality of Anchorage v. Devon*, we adopted the board's test for fraud claims under AS 23.30.250(b).[16]  As set out in *Devon*, for an employer to prevail on a fraud claim under subsection .250(b), "[t]he employer must show that (1) the employee made statements or representations; (2) the statements were false or misleading; (3) the statements were made knowingly; and (4) the statements resulted in the employee obtaining benefits."[17]  The standard of proof in subsection .250(b) cases is by a preponderance of the evidence.[18]

The commission rejected Shehata's argument that an employer must prove all of the elements of common law fraud in order to secure a reimbursement order under subsection .250(b).  It stated that "the statutory remedy provided in AS 23.30.250(b) is, in and of itself, complete, and requires neither a showing of 'damages' nor 'justifiable reliance.'"  It distinguished common law fraud from fraud in workers' compensation by noting that an employer's payment of compensation to an injured worker is imposed by statute, so that an employer has a legal obligation to pay unless it has adequate evidence on which to base a controversion.  The commission concluded that payment of compensation is not induced by a false statement in the same way that a contract or sale may be induced in a fraudulent misrepresentation claim.

Common law fraud claims require a showing of (1) a false representation of fact; (2) knowledge of the falsity of the representation; (3) intention to induce reliance; (4) justifiable reliance; and (5) damages.[19]  Shehata argues that an employer must prove all of the elements of common law fraud in order for the board to order reimbursement under subsection .250(b), but justifiable reliance is the element that is key to his case.  As a general rule, in common law fraud, a person cannot justifiably rely on a statement she knows to be false.[20]  Because the adjuster testified here that she knew Shehata was working when he said that he was not, Shehata concludes that the Salvation Army cannot show justifiable reliance and is not entitled to a reimbursement order for fraud under subsection .250(b).

We begin with the statutory language to determine whether an employer must prove all of the elements of common law fraud in order to secure a reimbursement order under subsection .250(b).  "The goal of statutory construction is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others."[21]  When construing a statute, we look at three factors: the language of the statute, the legislative history, and the legislative purpose behind the statute.[22]  Nothing in the language of the statute or the legislative history indicates that the legislature intended to require an employer to prove all of the elements of common law fraud or misrep-

---

is irrelevant to this appeal.  *See* ch. 10, § 61, FSSLA 2005.

16.  124 P.3d 424, 429 (Alaska 2005).

17.  *Id.* (citing *Church v. Silver Bay Logging, Inc.,* AWCB Decision No. 99–0139 (June 24, 1999)).

18.  *DeNuptiis v. Unocal Corp.,* 63 P.3d 272, 278 (Alaska 2003).

19.  *Jarvis v. Ensminger,* 134 P.3d 353, 363 (Alaska 2006) (citing *City of Fairbanks v. Amoco Chem. Co.,* 952 P.2d 1173, 1176 n. 4 (Alaska 1998)). Shehata's reliance on *Seybert* is misplaced. *Seybert* dealt with setting aside a settlement agreement because of an alleged material misrepresentation that induced the employee to enter into the agreement.  *Seybert,* 182 P.3d at 1093.  We had previously decided that the board had the inherent authority to set aside a settlement agreement because of fraud.  *See Williams v. Abood,*

53 P.3d 134, 144 (Alaska 2002).  Also, contract rescission is an equitable, not a statutory, remedy.  *See McKeown v. Kinney Shoe Co.,* 820 P.2d 1068, 1071 (Alaska 1991).

20.  *See* 2 DAN B. DOBBS, THE LAW OF TORTS § 474 (2001) (stating that plaintiff who enters into transaction without belief in truth of misrepresentation does not rely on misrepresentation).  *See also* RESTATEMENT (SECOND) OF TORTS § 548 cmt. a (1977); 37 AM JUR.2D *Fraud and Deceit* § 242 (2001).

21.  *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 905 (Alaska 1987) (citing *State v. Alex,* 646 P.2d 203, 208 & n. 4 (Alaska 1982)).

22.  *Western Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.,* 101 P.3d 1047, 1050 (Alaska 2004) (citing *Muller v. BP Exploration (Alaska) Inc.,* 923 P.2d 783, 787 (Alaska 1996)).

resentation in order to secure reimbursement under subsection .250(b). The purpose identified by the sponsor for subsection .250(b) was to permit employers to get reimbursement orders for fraud from the board rather than from the court.[23] Although there may be some similarities between common law fraud and fraud for purposes of subsection .250(b), we decline to read into the statute a legislative intent to incorporate all of the elements of common law fraud. Courts of two other states that have considered similar arguments have rejected them, holding that workers' compensation fraud statutes do not incorporate all of the elements of common law fraud.[24]

■ But even if AS 23.30.250(b) does not require proof of all of the elements of common law fraud, we hold that it does require a causal link between a false statement or representation and benefits obtained by the employee. Subsection .250(b) states that the board "shall order reimbursement" when it finds that a person has "obtained compensation ... by knowingly making a false or misleading statement or representation for the purpose of obtaining that benefit." The plain language of the statute requires causation. As a transitive verb, "obtain" means "to gain possession of, esp[ecially] by intention or endeavor."[25] "By" has many meanings, but the relevant definition here appears to be "through the agency or action of."[26] The phrase "obtain by" strongly suggests causation.[27] Read as a whole, the statute requires that the false statement or repre-

sentation be a causal factor in the employer's payment of workers' compensation benefits.[28]

■ Here, the board ordered Shehata to reimburse the Salvation Army "for TTD received from September 12, 2005 to October 14, 2005 for fraudulently obtaining these benefits with false or misleading statements." Because logically a cause must come before a result,[29] Shehata's false statement on October 14, 2005 cannot have been a causal factor in the Salvation Army's payment of benefits before he made the statement. The board decision is potentially ambiguous in this regard. It found that Shehata "systematically attempted to mislead the employer concerning his ability to work from September 12, 2005 to October 15, 2005." The phrase "from September 12, 2005 to October 15, 2005" could modify "attempted to mislead" or "work." At oral argument before us, the Salvation Army clarified that Shehata made no false statements related to his employment at Totem before October 14, 2005, so the only false statements were made on or after October 14. Absent some other false statement or representation, the board erred in concluding that Shehata had obtained TTD benefits before October 14, 2005, fraudulently by means of "false or misleading statements."

**B. Shehata's Silence Was Not a Representation for Purposes of AS 23.30.250(b).**

■ Although the board's order focused on Shehata's October 14 and 17 statements to the adjuster, the appeals commission de-

---

**23.** Minutes, House Labor & Commerce Comm. on H.B. 237 19th Legis. (Mar. 15, 1995) (statement of Rep. Eldon Mulder, prime sponsor of H.B. 237).

**24.** *Tauese v. State, Dep't of Labor & Indus. Relations*, 113 Hawai'i 1, 147 P.3d 785, 821 (2006); *Doe v. Kansas Dep't of Human Res.*, 277 Kan. 795, 90 P.3d 940, 946–47 (2004).

**25.** WEBSTER'S II NEW COLLEGE DICTIONARY 774 (3d ed.2005).

**26.** *Id.* at 156.

**27.** *Cf. Field v. Mans*, 516 U.S. 59, 66, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (construing "obtain by" in Bankruptcy Code to require causation).

The Salvation Army conceded at oral argument before us that "obtain" likely required some causal connection between the false statement and the benefits.

**28.** AS 23.30.250(b). The fourth element set out in the *Devon* test requires causation: The fourth element is that "the statements or representations resulted in the employee obtaining a benefit." *Municipality of Anchorage v. Devon*, 124 P.3d 424, 429 (Alaska 2005). AS 23.30.250(b) also requires that the statements or representations be made for the purpose of obtaining benefits.

**29.** *Cf. Turnbull v. LaRose*, 702 P.2d 1331, 1335 (Alaska 1985) (noting that "one cannot be induced to enter into an agreement as a result of a later misrepresentation").

cided that silence could be a "knowing misrepresentation" under subsection .250(b). It determined that an employee has "an affirmative obligation to disclose information that would affect a right to compensation" and that Shehata's failure to disclose his work status could "result in the continuing payment of compensation" and thus could have resulted in his obtaining benefits.[30] The commission cited no statutory language, legislative history, or board regulation to support its conclusion either that an employee has an affirmative duty to disclose "information that would affect a right to compensation" or that failure to disclose such information can serve as a basis for a reimbursement order under subsection .250(b).

We requested supplemental briefing from the parties about whether an employee has an affirmative duty to disclose his work status when he is receiving compensation benefits and whether any such duty could serve as the basis of a fraud claim under subsection .250(b). Shehata argued, based on the language of the statute, that there is no affirmative duty to disclose one's work status, and that even if there is a duty, his failure to disclose his work could not be the basis for a fraud claim. The Salvation Army conceded that there is no explicit statutory duty to disclose employment while receiving workers' compensation benefits, but nonetheless insisted that such a duty is implicit in the workers' compensation statute. It asserted that because the employer is required to pay compensation in the absence of information showing that a claimant is no longer entitled to it and because the claimant is in the best position to know whether he is working, it is fair to impose a duty to disclose work on a claimant. At oral argument before us, the Salvation Army justified the board's order for reimbursement of benefits received before October 14 on the grounds that an employee has an obligation to contemporaneously inform the adjuster of employment if he is receiving TTD benefits.[31]

The plain language of the statute does not authorize the board to order reimbursement based on silence, nondisclosure, or omissions: it requires a finding that a person made a "false or misleading statement or representation."[32] The first element of the test in *Devon* is that the employee "made statements or representations."[33] The Salvation Army conceded at oral argument before us that Shehata made no affirmative false statement or representation before October 14, but urged us to uphold the commission's decision because Shehata did not contemporaneously inform the adjuster he was working. The legislature's failure to include omissions or nondisclosure in the statutory language suggests that ordinarily an omission or nondisclosure could not serve as a basis for a reimbursement order under subsection .250(b).[34] Nonetheless, we recognize

30. We assume that the duty the commission identified would have required Shehata to report his employment to the Salvation Army before his October 14 conversation with the adjuster, because otherwise it could not serve as an independent misrepresentation. The commission did not specify a date by which Shehata was required to report his work at Totem.

31. At oral argument before us, the Salvation Army's position about the duty to disclose work was somewhat unclear. When asked whether it would have been able to bring a fraud claim against Shehata if he had told the truth on October 14, 2005, conversation, counsel for the Salvation Army said no. He later explained that had Shehata told the truth, the employer could have adjusted his benefits based on an overpayment and calculated temporary partial disability benefits. If a fraud reimbursement order could be based on a failure to disclose employment, Shehata would have violated a duty to disclose by not reporting that he was working whether or not he told the truth on October 14.

32. AS 23.30.250(b). In contrast, the disqualification section of the Alaska Employment Security Act includes failure to disclose or report a material fact as a basis for disqualification. AS 23.20.387. Also, the employment security regulations set out an affirmative duty to provide information on eligibility. *See* 8 Alaska Administrative Code (AAC) 85.104(a) (2004).

33. *Municipality of Anchorage v. Devon*, 124 P.3d 424, 429 (Alaska 2005).

34. *See Trapp v. State, Office of Pub. Advocacy*, 112 P.3d 668, 674 n. 16 (Alaska 2005) (citing *Ellingstad v. State, Dep't of Natural Res.*, 979 P.2d 1000, 1006 (Alaska 1999) (noting that *expressio unis est exclusio alterius* is useful and logical maxim of statutory construction)). We note as well that some state workers' compensation fraud statutes include omissions or concealment as a basis for fraud. *See, e.g.,* HAW REV.STAT. § 386–98(a)(8) (2008); KAN. STAT. ANN. § 44–5,120(d)(4)(B) (2000); N.Y. WORKERS' COMP. LAW § 114(1) (McKinney 2006).

that in the common law, silence can be a misrepresentation when a person has a duty to speak.[35] We have also held that silence in the face of a statutory duty to disclose can "amount[ ] to the concealment of a material fact" for purposes of estoppel.[36] Accordingly, we consider whether Shehata had a duty to disclose his employment at Totem to the Salvation Army.

The parties agreed that no statute or regulation explicitly imposes on an employee the duty to inform the employer, the adjuster, or the board that he is working. The commission cited none. Neither the commission nor the Salvation Army pointed to anything in the record imposing such a duty. Nevertheless, at oral argument before us, the Salvation Army advocated finding an implicit, narrow duty to disclose employment when an employee is receiving TTD benefits. In the absence of a statute or regulation requiring an employee to tell the board, the adjuster, or his employer that he is working, we are reluctant to find a specific affirmative duty to disclose employment, even when an employee is receiving TTD benefits. We are especially hesitant to do so in light of the commission's broad statement that an employee has an affirmative obligation to disclose "information that would affect a right to compensation" and its conclusion that a failure to disclose that information can serve as the basis for a fraud claim. As both parties recognized at oral argument before us, a broad duty to disclose that could result in fraud claims against employees might cause unnecessary disruption of benefits or chill employee claims. If an employee has a duty to disclose any information that would affect a right to compensation immediately, would an employee who waited a month, until his next scheduled medical appointment, to discuss an improvement in symptoms be liable for fraud

because he did not immediately disclose the information? We agree with the Salvation Army that the employee is in the best position to know when he has begun to work and that employees should not be getting both TTD and working.[37] Nonetheless, we can find no indication that the legislature or the board intended to impose on an employee an affirmative duty to tell the employer, the board, or the adjuster that he has begun to work, such that a failure to disclose his work status would be a false representation for purposes of subsection .250(b). There is also nothing in the record to show that anyone told Shehata that he was required to report his employment within a certain period of time or that he might be subject to a fraud claim if he did not report it. Here, Shehata told the adjuster in the October 14 conversation that he was looking for work, yet the adjuster did not tell him that he needed to tell her immediately if he was hired, nor did she tell him that he might be able to get temporary partial disability payments while working.

For these reasons, we conclude that Shehata's nondisclosure of his work at Totem was not a "false statement or representation" under subsection .250(b) and that he cannot be ordered to reimburse the Salvation Army for benefits he obtained because of the nondisclosure.

### C. Substantial Evidence

The remaining question is whether substantial evidence in the record supports the board's order for reimbursement. Shehata argues that substantial evidence does not support a finding of fraud because there was no showing that the Salvation Army reasonably or justifiably relied on Shehata's misrepresentation when it paid him TTD

---

**35.** See *Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1202 (Alaska 1998) (citing *Turnbull v. LaRose*, 702 P.2d 1331, 1334 (Alaska 1985)).

**36.** *Stevenson v. Burgess*, 570 P.2d 728, 733 (Alaska 1977).

**37.** We note that the federal workers' compensation system and some states require workers' compensation recipients to file forms periodically disclosing receipt of wages. *See* 20 C.F.R.

§§ 10.525, 10.528 (2008) (requiring claimant to notify department immediately of return to work and to submit reports of earnings); La Admin. Code tit. 40, pt. 1, § 1903 (2008) (requiring periodic filing of earnings); N.D. Cent.Code §§ 65–01–02(22),–05–02,–05–08(3) (2003 & Supp.2007) (requiring employee to report work or income from work and workers' compensation agency to provide reporting forms). *See also Wolford v. Pinnacol Assurance*, 107 P.3d 947, 949 (Colo. 2005) (noting requirement that claimant file sworn statements to receive TTD benefits).

benefits.[38] He also argues that the Salvation Army had adequate evidence to support a controversion before it paid him benefits on October 24, so the commission's conclusion to the contrary is incorrect.

Shehata cannot have obtained benefits by making his false statement before he made the statement, so Shehata can only be required to reimburse the Salvation Army for benefits he received after he made the false statement. Although the board's order for reimbursement of all benefits paid for the period from September 12 to October 15, 2005, was too broad, Shehata may still be ordered to reimburse the Salvation Army for benefits it paid him after the false statement. The record reflects that the Salvation Army paid Shehata TTD benefits on October 24, 2005, for the period from October 10 to October 23.[39]

In order for the Salvation Army to get reimbursement, it had to show a causal link between the false statement and the payment of benefits. Here, it does not appear that Shehata's false statement alone caused the adjuster to pay benefits: she testified that she knew he was working when he told her he was not, so it is unlikely that she was actually deceived by his statement. Her stated reason for paying Shehata TTD benefits on October 24 was that she did not have adequate confirming evidence that he was working to be able to file a valid controversion.

▮▮▮ In determining whether the false statement was a causal factor in the payment of benefits, we consider whether the false statement influenced the adjuster in paying benefits after the statement was made, taking into account whether she was actually deceived and, if she was not, whether she acted reasonably to investigate the false

statement. Although there is no evidence that the adjuster was deceived by the false statement, we agree that she did not have sufficient evidence to file a good faith controversion when the statement was made. Our review of the video tape supports the adjuster's testimony that the video alone was insufficient evidence to support a good faith controversion. A file stamp on the investigator's report shows that the adjuster received it a week after the October 24 payment was authorized. Although the adjuster could have gotten written confirmation from Totem sooner than she did, we cannot say that her delay in investigating was unreasonable. We do not suggest that an employer has a duty to investigate all statements made by an injured worker. If an employer seeks claim—related information from the person most likely to have the information-here, the injured worker—the employer should be able to rely on the worker's representation without needing to hire an investigator or expend resources to verify the worker's statement. Unnecessary investigative expenses increase the cost of claims and undercut the legislature's intent that the workers' compensation statute be construed to "ensure the quick, efficient, fair and predictable delivery of indemnity" to injured workers at a reasonable cost to employers.[40] It is also important to avoid overly hasty controversions, which can expose an employer to the risk of a penalty[41] and can disrupt benefits to injured workers.[42] But when, as here, the employer is reasonably certain that the employee is not being truthful, the employer has an obligation to protect its interests and, if it does not have adequate evidence to support a controversion, it should act reasonably to secure it.[43]

### D. Shehata's Waiver Argument

▮▮▮ Shehata asserts here that the commission erred in concluding that the Salva-

---

**38.** Justifiable reliance is the cause-in-fact element in the common law tort of misrepresentation. RESTATEMENT (SECOND) OF TORTS § 546 cmt. a (1977).

**39.** From the record, it appears that Shehata could be liable for at most one week of benefits. Because Shehata did not work at Totem after October 14, we assume he was eligible for TTD benefits during the week of October 17, 2005.

**40.** AS 23.30.001(1).

**41.** AS 23.30.155(e).

**42.** AS 23.30.155(a), (d)-(e).

**43.** We express no opinion about the board's award of attorney's fees, which Shehata did not raise as a separate issue. Because we reverse part of the underlying reimbursement order, we leave it to the board to determine whether the Salvation Army's fee award should be adjusted.

tion Army could seek reimbursement of the controverted TTD benefits using subsection .250(b)[44] in the absence of fraud. He further asserts that the Salvation Army waived its right to seek reimbursement under AS 23.30.155(j), which permits recoupment of overpaid benefits through withholding, by failing to adjust his TTD payments after he told it that he would not contest the controversion.

Shehata misunderstands the commission's resolution of this issue. Because it affirmed the board's order under subsection .250(b), the commission declined to address the waiver issue Shehata raised. Because of its affirmance of the board's order, it effectively found that Shehata had obtained benefits fraudulently, so his waiver argument was moot. From the record, it does not appear that Shehata is currently receiving workers' compensation benefits, so the issue of waiver is not ripe. If, at a later time, Shehata is awarded other benefits and the Salvation Army attempts to take an offset for the benefits at issue in this appeal, Shehata can raise the argument again.

### E. The Appeal Was Not Frivolous.

■ In a divided decision, the commission ordered Shehata to pay the Salvation Army $5,270 in attorney's fees for the appeal to the commission. One commissioner decided that Shehata's appeal was frivolous or unreasonable. Another commissioner found that Shehata was not an "injured worker" within the meaning of the statute, so that the statutory provision limiting attorney's fees awards against injured workers would not apply. The commission chair dissented from the award of attorney's fees, concluding that Shehata's appeal was not frivolous or unreasonable and that Shehata was still an injured worker for purposes of the attorney's fee statute.

Shehata argues here that the commission's decision is contrary to both the law and the facts. The Salvation Army asserts that the commission relied on subsection .250(b) in awarding fees and that an award of fees is mandatory under that subsection. It concedes that Shehata was an injured worker because he had a compensable injury, but contends that Shehata's arguments were "without basis in fact or law" and asks us to affirm the commission's award of fees in the appeal.

Alaska Statute 23.30.008(d) authorizes the appeals commission to award attorney's fees and costs to a successful party in an appeal. It also provides that "the commission may not make an award of attorney fees against an injured worker unless the commission finds that the worker's position on appeal was frivolous or unreasonable or the appeal was taken in bad faith."[45] We review an award of attorney's fees for abuse of discretion.[46]

We conclude that the commission abused its discretion in awarding attorney's fees to the Salvation Army for the commission appeal here. Neither commissioner who granted the Salvation Army's fee request found that Shehata had brought the appeal in bad faith, and there is no evidence of bad faith on his part. Shehata was an injured worker, as the Salvation Army concedes. No one contests that he suffered a compensable injury. Even after the false statement, the Salvation Army paid him PPI benefits, and the adjuster testified that the employer "never contested that he was entitled to" the benefits.

Shehata's appeal was also not frivolous or unreasonable. Even if he had been unsuccessful in his appeal to this court, the main legal issue he raised had a basis in law and fact. Both AS 23.30.250(b) and the elements in *Devon* require causation,[47] and justifiable reliance is the cause-in-fact element of misrepresentation. Factually, the adjuster's testimony that she knew Shehata was working when he stated he was not undercut the notion that the false statement had any causal effect on the payment of benefits.

---

**44.** *See supra* Part IV.A.

**45.** AS 23.30.008(d).

**46.** *Crawford & Co. v. Vienna,* 744 P.2d 1175, 1178 n. 3 (Alaska 1987).

**47.** *Municipality of Anchorage v. Devon,* 124 P.3d 424, 429 (Alaska 2005).

At oral argument before us, the Salvation Army asserted that the commission's fee award was also justified because of Shehata's opposition to discovery at the board level or was authorized by AS 23.30.250(b). One commissioner relied in part on Shehata's opposition to discovery before the board in his explanation supporting the fee award. But a party's conduct before the board does not bear on the frivolousness of an appeal to the commission.[48] Alaska Statute 23.30.250(b) does not authorize the commission to award fees. We agree with the commission chair that the legislature must act if it wishes to grant the commission the power to award fees under subsection .250(b).

## V. CONCLUSION

Because AS 23.30.250(b) requires a causal connection between the false statement and the workers' compensation benefits obtained and because the employee did not have a duty to disclose his work status, we REVERSE in part the appeals commission decision affirming the board's reimbursement order. We AFFIRM that part of the decision requiring Shehata to repay one week of benefits. We also REVERSE the commission decision awarding attorney's fees for the appeal.

MATTHEWS, J., not participating.

---

48. In any event, the board's fee award included attorney's fees related to discovery, and Shehata did not appeal the discovery issues to the commission.