E. Kate TEA, Guardian Ad Litem, on Behalf of A.T. and S.T., Minors Under the Age of Eighteen Years.

No. S–14200.

Supreme Court of Alaska.

June 22, 2012.

Robert R. Polley, Kodiak, and Dianne Olsen, Law Office of Dianne Olsen, Anchorage, for Guardian Ad Litem.

David T. Jones, Assistant Attorney General, Anchorage, and John J. Burns, Attorney General, Juneau, for State of Alaska.

Dan S. Bair, Assistant Public Advocate, and Richard Allen, Public Advocate, Anchorage, for Mother.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

## OPINION

WINFREE, Justice.

## I. INTRODUCTION

Eight days after relinquishing her parental rights to twin children, their mother filed a

motion requesting that the superior court order the State of Alaska, Department of Health and Social Services, Office of Children's Services (OCS) to release the children's annual Permanent Fund Dividends (dividends) to her. The superior court granted the motion. Because OCS was legally entitled to obtain and hold the children's dividends in trust, we reverse the superior court's order.

## II. FACTS AND PROCEEDINGS

Twin children were born in August 2009. In January 2010 OCS filed a non-emergency child in need of aid petition regarding the children. In February the superior court granted OCS temporary legal custody; in March the superior court granted OCS physical custody and the children were removed from their parents' care.

In August 2010 OCS sent the Department of Revenue (the Department) notice that OCS had custody of the children.[1] OCS received the dividends and placed them in trust for the children. Both parents voluntarily relinquished their parental rights on December 8, 2010. The superior court terminated both parents' parental rights on December 28, 2010.

On December 16, 2010, after the relinquishment of parental rights but before the termination order was entered, the mother sought a court order requiring OCS to release the children's dividends to her. The

guardian ad litem (GAL) and OCS opposed her motion. The superior court ordered OCS to provide proof of compliance with 15 AAC 23.223(i).[2] OCS filed copies of the address change forms and an affidavit of the OCS employee who completed the forms stating OCS had complied with the Department's regulation.

The superior court concluded OCS's filing did not comply with the regulation's "evidence of the change in legal custody" requirement and ordered OCS to release the dividends to the mother. The GAL sought reconsideration, which the superior court denied.

We granted the GAL's petition for review.

## III. STANDARD OF REVIEW

■ We typically interpret regulations with some deference to the agency's own interpretation,[3] but the agency that promulgated 15 AAC 23.223(i) is not a party and has not otherwise offered an interpretation. We therefore interpret the regulation using our independent judgment "seeking to adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[4]

## IV. DISCUSSION

### A. Overview

■ When a parent-child relationship has not been altered by state action, AS 43.23.005 allows the parent to apply for a dividend on

---

1. The Department's regulations envision situations where OCS obtains custody of a child after the dividend application period but before the dividend is paid. 15 Alaska Administrative Code (AAC) 23.223(i) (2010) provides:
 If [OCS] obtains legal custody of an eligible child before the department has paid an application filed by any other sponsor of the child, the department will pay the child's dividend in accordance with (g) of this section if [OCS] furnishes the department
 (1) evidence of the change in legal custody; and
 (2) a timely request for a change of address.

2. See note 1, above.

3. Alaskan Crude Corp. v. State, Dep't of Natural Res., Div. of Oil & Gas, 261 P.3d 412, 419 (Alas-

ka 2011) ("We apply the reasonable basis standard when reviewing an agency's interpretation of its own regulation. Under this standard, we defer to the agency unless its interpretation is plainly erroneous and inconsistent with the regulation." (internal citations and quotation marks omitted)).

4. Harrod v. State, Dep't of Revenue, 255 P.3d 991, 995 (Alaska 2011) (citing Temple v. Denali Princess Lodge, 21 P.3d 813, 815 (Alaska 2001)) (stating statutory interpretation questions not involving agency expertise call for an independent judgment standard of review).

behalf of a child.[5] Traditional parental rights include "[t]he right to control and manage a minor child's property," including a dividend.[6] But AS 47.10.084(a) specifically gives OCS or the GAL "the right and responsibility to make decisions of financial significance concerning the child" after a child has been adjudicated a child in need of aid under AS 47.10.080(c).

Once OCS takes custody of a child, AS 43.23.005—by its inclusion of the terms "guardian" and "other authorized representative"—allows OCS to apply for a dividend on behalf of a child in OCS custody.[7] In addition to AS 43.23.005's permissive phrasing, AS 47.10.115 requires OCS to apply for an eligible child's dividend "if the child is in the custody of [OCS] when the application is due."[8] The Department accepts applications from January 1 to March 31 of the "dividend year."[9]

The Department's regulations provide that OCS may apply for a dividend on a child's behalf if the child is in OCS custody on the last day of the qualifying year,[10] and that OCS also can request the Department to redirect a dividend:

> If [OCS] obtains legal custody of an eligible child before the department has paid an application filed by any other sponsor of the child, the department will pay the child's dividend in accordance with (g) of this section if [OCS] furnishes the department
>
> (1) evidence of the change in legal custody; and
>
> (2) a timely request for a change of address.[11]

OCS can also apply for a dividend beyond the regular deadline on behalf of a child in its custody.[12] Finally, if multiple applications are filed on behalf of one child, the Department will pay the OCS application.[13]

Both title 43 and title 47 require OCS to place a child's dividend in trust once the

---

5. AS 43.23.005(c) provides:
 A parent, guardian, or other authorized representative may claim a permanent fund dividend on behalf of an unemancipated minor or on behalf of a disabled or an incompetent individual who is eligible to receive a payment under this section. Notwithstanding (a)(2)-(4) of this section, a minor is eligible for a dividend if, during the two calendar years immediately preceding the current dividend year, the minor was born to or adopted by an individual who is eligible for a dividend for the current dividend year.

6. *L.A.M. v. State*, 547 P.2d 827, 833 n. 13 (Alaska 1976); *see also Hayes v. Hayes*, 922 P.2d 896, 901 (Alaska 1996) (noting Alaska law is "silen[t] as to what parents must or should do with PFDs received on behalf of unemancipated minors").

7. AS 43.23.005(c) ("A ... *guardian*, or *other authorized representative* may claim a permanent fund dividend on behalf of an unemancipated minor ... who is eligible to receive a payment under this section." (emphasis added)).

8. AS 47.10.115(a) ("[OCS] shall annually apply for a permanent fund dividend and retain in trust under AS 43.23.015(e) for the benefit of the child the dividend and accrued interest on the dividend if the child is in the custody of [OCS] when the application is due.").

9. AS 43.23.011(a). " '[D]ividend year' means the calendar year in which the dividend is declared...." 15 AAC 23.993(a)(7).

10. 15 AAC 23.113(f) ("A representative of [OCS] may apply for a dividend for a child who is in [OCS's] custody on December 31 of the qualifying year."). " '[Q]ualifying year' means the calendar year immediately preceding the dividend year...." 15 AAC 23.993(a)(11); *see also* AS 43.23.095(6).

11. 15 AAC 23.223(i).

12. 15 AAC 23.133(f) provides:
 If a representative of [OCS] failed to apply for a dividend for a child who is in its custody on December 31 of the prior qualifying year, and the department does not have a timely filed application on file for the child, a representative of [OCS] may submit an application on the child's behalf for the prior year's dividend.

13. *See* 15 AAC 23.223(h) ("If competing applications are timely filed on behalf of an eligible child, the department will not pay any dividend for the child unless ... one of the timely filed competing applications was filed by [OCS] under the provisions of 15 AAC 23.113(f)...."); 15 AAC 23.223(i) ("An application timely filed by [OCS] for an eligible child under the provisions of 15 AAC 23.113(f) will be paid over all timely filed competing applications in accordance with (g) of this section.").

Department pays it. Under title 43, "[i]f a public agency claims a permanent fund dividend on behalf of an individual, the public agency shall hold the dividend in trust for the individual."[14] Under title 47, OCS is also directed to hold a child's dividend in trust under AS 43.23.015(e).[15]

**B. Redirecting An Existing Dividend Application Under 15 AAC 23.223(i) Does Not Incorporate 15 AAC 23.113(f)'s December 31 Custody Requirement.**

The parties offer competing interpretations of 15 AAC 23.223(i). The mother argues the regulation "requires OCS to inform the Department ... that OCS has custody of the child and that the child was in OCS custody on December 31 of the qualifying year."[16] OCS and the GAL counter that the regulation provides two alternative methods for OCS to receive a dividend in trust for a child, either: (1) applying under 15 AAC 23.113(f); or (2) submitting evidence of change in custody and address. OCS admits it did not submit an application, only change of address forms.

The mother bases her reading of 15 AAC 23.223(i) on the requirement of 15 AAC 23.133(f) that a child be in OCS custody on December 31 before OCS can apply for the child's dividend and the reference to 15 AAC 23.133(f) in the first sentence of 15 AAC 23.223(i)—"[a]n application timely filed by [OCS] for an eligible child under the provisions of 15 AAC 23.113(f) will be paid over all timely filed competing applications." OCS bases its reading of 15 AAC 23.223(i) on the regulation's plain language.

 OCS offers a more natural reading of the regulation. When a regulation's interpretation is challenged, we apply the same standards that we apply to statutory interpretation.[17] "When construing statutes, we consider three factors: 'the language of the statute, the legislative history, and the legislative purpose behind the statute.'"[18] "We have held that 'the plainer the language of the statute, the more convincing any contrary legislative history must be ... to overcome the statute's plain meaning.'"[19]

Although not separated into subparts, 15 AAC 23.223(i) speaks to two distinct factual scenarios.[20] The first sentence applies if OCS files an application under 15 AAC 23.113(f) and mandates that OCS's application "will be paid over all timely filed competing applications." The second sentence applies if "any other sponsor of the child" files an application, and OCS "obtains legal custody" of the child prior to that application being paid.[21]

**14.** AS 43.23.015(e).

**15.** AS 47.10.115(a).

**16.** The mother also argues that the December 31 custody requirement has been adopted as official OCS policy. But OCS's policy merely parallels 15 AAC 23.113(f) and 15 AAC 23.223(i); its adoption as OCS policy does nothing to further this argument.

**17.** *See Romann v. State, Dep't of Transp. & Pub. Facilities,* 991 P.2d 186, 191 (Alaska 1999) (applying sliding scale analysis including plain meaning and legislative history to regulation interpretation).

**18.** *Oels v. Anchorage Police Dep't Emps. Ass'n,* 279 P.3d 589, 595, 2012 WL 163913 (Alaska 2012) (quoting *Shehata v. Salvation Army,* 225 P.3d 1106, 1114 (Alaska 2010)).

**19.** *Id.* (quoting *Peninsula Mktg. Ass'n v. State,* 817 P.2d 917, 922 n. 6 (Alaska 1991)). The

parties do not offer, and we are unable to find, any relevant history or evidence of the agency's intent in promulgating 15 AAC 23.223(i), let alone any intent contrary to the regulation's plain meaning. Accordingly, we base our analysis on the regulation's plain meaning.

**20.** Disabled adults have parallel provisions. *See* 15 AAC 23.123 ("Application on behalf of a disabled, incompetent, or other adult."); 15 AAC 23.223(j) (competing applications on behalf of an adult); 15 AAC 23.223(k) (providing Office of Public Advocacy (OPA) application has priority and prior application can transfer to OPA).

**21.** 15 AAC 23.223(i) states the Department "will pay the child's dividend in accordance with (g) of this section" if the requirements of (i) are met. 15 AAC 23.223(g) provides:

> The department will pay a dividend to a public agency trust account established in accordance with AS 43.23.015(e) if the

As OCS points out, reading the second sentence of 15 AAC 23.223(i) as requiring that OCS have custody of the child on December 31 of the qualifying year would render the sentence superfluous. Because dividends are not paid until after the qualifying year, under a December 31 requirement OCS would always have custody of the child prior to payment and thereby render the pre-payment custody requirement meaningless.

The two sentences of 15 AAC 23.223(i) also reference different triggering events. The first sentence references "an application"; the second sentence references evidence of a change in custody and a request for a change of address. A dividend application must be on a Department form [22] and requires an applicant to provide more information than evidence of changed custody and a new address.[23] No regulation specifies a required form or details the evidentiary requirement of 15 AAC 23.223(i). These distinct triggering events also support reading 15 AAC 23.223(i) as creating two paths for OCS to obtain a dividend for a child in its custody.

 We therefore hold that, based on its plain meaning, 15 AAC 23.223(i) creates two independent methods for OCS to claim a child's dividend, either: (1) filing an original application; or (2) redirecting an existing application.

### C. It Was Error For The Superior Court To Find OCS Did Not Comply With 15 AAC 23.223(i).

OCS argues that it complied with the provisions of 15 AAC 23.223(i), because the change of address forms served as both a

(1) public agency claims a dividend on behalf of an individual;
(2) public agency timely provides the department with a court order showing the agency has been granted guardianship or conservatorship of the individual; and
(3) individual is otherwise eligible for the dividend.

22. 15 AAC 23.103(a) ("An individual must use a form prescribed by the department to apply for a dividend.").

notice of the new address under 15 AAC 23.223(i)(2) and as evidence of a change in custody under 15 AAC 23.223(i)(1) by the inclusion of "Office of Children's Services" as the children's new address. The mother responds that because the regulation requires evidence of the change of address and evidence of the change in custody, "something more than an address change alone is required."

OCS and the GAL argue that the fact the Department paid the dividends to OCS suggests the Department itself thought the change of address forms were sufficient to comply with 15 AAC 23.223(i) and the superior court should have deferred to the Department's determination. The mother counters that no deference is due as the change of address forms contained no evidence of the December 31 custody she maintains is required under 15 AAC 23.113(f)—a construction we reject. Although the mother has labeled the underlying action as an "unauthorized seizure" of the dividends, what really underlies the dispute is the Department's decision to pay the dividends to OCS rather than the mother. OCS submitted the change of address forms, but paying the dividends to OCS was the Department's determination.

 The Department's implicit determination that OCS complied with 15 AAC 23 223(i) is arguably supported by substantial evidence.[24] As noted above, 15 AAC 23.223(i) does not contain the requirements of 15 AAC 23.113(f). A change of address form listing OCS as a child's new address certainly implies the child is in OCS custody. More importantly, though, the superior court (and all of the parties in the superior court

23. See 15 AAC 23.173 ("Proof of eligibility").

24. See Shea v. State, Dep't of Admin., Div. of Ret. & Benefits, 267 P.3d 624, 630 (Alaska 2011) (noting agency factual findings are reviewed for substantial evidence "which is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support the [agency's] conclusion'" (quoting Lopez v. Adm'r, Pub. Emps.' Ret. Sys., 20 P.3d 568, 570 (Alaska 2001))).

proceeding) knew of OCS's custody of the children because the superior court itself signed the custody order. There was and could be no dispute that OCS actually was entitled to redirect and hold the children's dividends, regardless of the information provided to the Department. If the superior court had concerns about the information OCS provided to the Department, it could have directed OCS to supplement its filing; the superior court elevated form over substance by ordering release of the children's dividends to the mother on the ground that OCS failed to provide the custody order to the Department.

## V. CONCLUSION

We REVERSE the superior court's decision.[25]

**25.** Because we hold OCS complied with 15 AAC 23.223(i) we do not reach the GAL's argument that 15 AAC 23.113(f) conflicts with AS 47.10.115(a) or OCS's argument that AS 47.10.115(b) required the superior court to consider the best interests of the children before ordering the release of their dividends.