*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARIANNE E. BURKE, mother of ABIGAIL E. CAUDLE (deceased), | ) ) ) | Supreme Court No. S-16137 |
| Appellant, | ) ) ) | Alaska Workers' Compensation Appeals Commission No. 14-022 |
| v. | ) ) ) | O P I N I O N |
| RAVEN ELECTRIC, INC. and LIBERTY MUTUAL INSURANCE COMPANY, | ) ) ) ) | No. 7241 - May 11, 2018 |
| Appellees. | ) ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: Marianne E. Burke, pro se, Anchorage, Appellant. Nora Barlow and Constance Livsey, Burr, Pease & Kurtz, Anchorage, for Appellees. Dario Borghesan, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Amicus Curiae State of Alaska. Eric Croft, The Croft Law Office, Anchorage, for Amicus Curiae Eric Croft.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

STOWERS, Chief Justice.

## I. INTRODUCTION

After an apprentice electrician was killed on the job, her mother sought workers' compensation death benefits or other damages related to her daughter's death. Acting on the advice of attorneys but representing herself, she brought a claim before the Alaska Workers' Compensation Board. She argued in part that the Alaska Workers' Compensation Act was unconstitutional because it inadequately compensated for her daughter's life, particularly given the circumstances of her daughter's death, and because it failed to consider her future dependency on her daughter. The Board denied her claim, and the Alaska Workers' Compensation Appeals Commission affirmed the Board's decision. The Commission also ordered the mother to pay the employer's attorney's fees and costs. We hold that the mother's constitutional rights are not violated by the Act. We reverse the Commission's award of attorney's fees but otherwise affirm the Commission's decision.

## II. FACTS AND PROCEEDINGS

Abigail Caudle was a 26-year-old apprentice electrician when she was electrocuted on the job while working for Raven Electric, Inc. According to a "Fatalgram" by the Alaska Department of Labor & Workforce Development, Division of Labor & Safety Standards, Occupational Safety & Health (AKOSH), it was Caudle's first day on that particular job, which involved the remodel of an Anchorage building.[1]

---

[1] *Fatalgram 11-07*, ALASKA DEP'T OF LABOR & WORKFORCE DEV., http://labor.state.ak.us/lss/forms/Fatalgram_11-07.pdf. A "Fatalgram" is a short report of a work-related fatality, which AKOSH has evidently adopted from the U.S. Mine Safety & Health Administration. *See* 4 HARRY M. PHILO & HARRY M. PHILO, JR., LAWYERS DESK REFERENCE § 29:13 (10th ed. 2014) (defining "fatalgrams" in mine safety context). In mine safety the documents "include a description of the circumstances of the incident . . . and recommendations for preventing the death." *Id.*

On the day of the accident Raven Electric initially planned to "rough[] in . . . three offices as far as outlets and switches," but the general contractor[2] changed the scope of work after Raven Electric's crew arrived, asking the electricians to tear out old light fixtures instead because the contractors "had already taken out the grid ceiling" and could not proceed with their work while the old fixtures were in place. Raven Electric did not have temporary lights set up, so the crew was "using some of the lights that were on while the construction was going on." The light switches for the light fixture Caudle was working on had been turned off, but no one had turned off the power at the electrical panel or otherwise disconnected power to the lights. Caudle used a noncontact voltage meter to check for power, and witnesses told AKOSH the meter showed a green signal, indicating no voltage.

Caudle began to remove the wire nuts and then "disconnected the neutral wire and was electrocuted between the load side neutral conductor and either the grounded conduit junction box, or the conduit to the left side of the neutral conductor." Coworkers heard her cry out, rushed to her aid, called emergency services, and began CPR. The efforts to assist her were unsuccessful, and Caudle was pronounced dead at the hospital less than an hour later. The electricians interviewed during the AKOSH investigation thought there had been a "back feed on the neutral" wire and suggested that the circuit had been wired incorrectly at some time in the past. AKOSH cited Raven Electric for several safety violations and ultimately agreed through an informal settlement to fine Raven Electric a total of $11,200 for those safety violations.

Raven Electric filed a report of injury with the Board and paid funeral expenses required by the Alaska Workers' Compensation Act (Act). Because Caudle

---

[2]    Raven Electric was a subcontractor on the job; Criterion General, Inc. was the project's general contractor, and Alaska USA Federal Credit Union was the building owner and thus potentially a "project owner" under AS 23.30.045.

was unmarried and had no dependents at the time of her death, the Act limited Raven Electric's liability to funeral expenses up to $10,000 and a $10,000 payment to the Second Injury Fund.[3]

Two years after Caudle's death, her mother Marianne Burke filed a written workers' compensation claim seeking death benefits. Burke was listed as a beneficiary on the claim form, and she attached a two-page addendum setting out some of her concerns about safety at the work site. She alleged that following Caudle's death she had "gotten the run around from all the lawyers on this," had "not been able to work," and had "been sick often due to [her] daughter's death."

Raven Electric filed an answer saying it had paid all workers' compensation benefits due and denying further benefits were owed. It also raised two affirmative defenses: Burke's claim was untimely under AS 23.30.105(a), and she was not a beneficiary because she was not dependent on Caudle at the time of Caudle's death as required by the Act.[4] Raven Electric later petitioned the Board to dismiss Burke's claim on those grounds.

In the course of pleadings and proceedings before the Board, Burke clarified that she was trying "to get justice for [her] daughter" and said the Board was "the only place that been allowed to get any source of justice." She did not want to produce tax records to show dependence on Caudle, and she asserted that she would have depended on Caudle for care in the future, even if she did not do so at the time of Caudle's death. Burke argued that simply because Caudle "was single . . . [did] not make

---

[3]    AS 23.30.040(c), .215(a). The Second Injury Fund is a fund designed to provide partial reimbursement to employers who hire workers with certain preexisting conditions in the event those workers later become disabled due to a work-related injury. AS 23.30.205.

[4]    AS 23.30.215(a), (c).

her life worth nothing, as the current laws imply" from the low amount of compensation benefits. Burke contended that both her own and Caudle's constitutional rights were violated by the limited compensation available for Caudle's death, particularly because of what Burke called Raven Electric's gross negligence. Burke filed a document entitled "Notice of Intent to Rely" which contained a copy of the AKOSH file on which Burke had made written comments.

The parties stipulated to a limited hearing in February 2014 to resolve disputes about procedure. Burke raised constitutional arguments about the Act at the hearing and explained her position on the procedural questions. The Board issued an interlocutory order resolving the procedural disputes and informing Burke that it did not have jurisdiction to decide constitutional issues. In its interlocutory order the Board "excluded" Burke's "Notice of Intent to Rely" as not relevant to the issue of Burke's entitlement to additional death benefits.

Raven Electric then requested a hearing on its petition to dismiss the claim; Burke opposed setting a hearing because she wanted more time to research the law and prepare her case. Burke's understanding was that she would have two years from the date she filed the claim to prepare for a hearing. Burke also argued in opposing the substance of Raven Electric's petition to dismiss that workers' compensation was the only legal remedy available to her and that the purpose of workers' compensation was "to protect workers, give value to their lives, [and] create safer work conditions, none of which occurred for [her] daughter." (Emphasis omitted.) She did not think the death benefits available for Caudle's death achieved these ends.

The Board set a hearing in July on the petition to dismiss. About 20 days before this hearing, Burke filed a clean copy of the AKOSH file along with a notarized statement from an agency representative that the copy was "from [the] State of Alaska Occupational Safety & Health records." Raven Electric objected to this evidence

because it had been "excluded" in the Board's interlocutory order.

At the beginning of the July hearing, Raven Electric again sought to exclude the AKOSH file as irrelevant; Burke contended that it should be part of the record for purposes of appeal. The Board hearing chair told Burke the Board was "not going to stop [her] from filing anything," that the AKOSH file was "not being . . . stricken from the record," and that it was "part of the record of the case no matter what." The Board panel decided to "exclude[] [the file] for the purpose of [the July] hearing."

The hearing consisted mainly of argument. As relevant to this appeal, Raven Electric argued that Burke was seeking some type of compensatory or punitive damages that were not authorized under the Act because workers' compensation was the exclusive remedy available for a work-related death. Raven Electric pointed out that the workers' compensation system had been in existence even in territorial days and that the Act represented a trade-off. It cited precedent holding that the low level of death benefits for single workers with no dependents did not violate equal protection. Burke reiterated her position that the Act provided inadequate compensation for her daughter's death, especially in light of what she considered Raven Electric's negligence and its failure to provide a safe workplace. She asked the Board to consider awarding the full amount of permanent partial impairment benefits under the Act, stating that something beyond funeral expenses should be paid to families of single workers who die on the job. Burke explained that she had suffered emotional harm and financial hardship due to Caudle's death because she had difficulties working after the death, and that Caudle's aunt Betty, from whom Caudle rented living quarters, had also suffered hardship. Burke again explained that she had brought the claim to the Board because it was "the only place [she could] get justice": the case had been "pigeonholed . . . into workers' comp," and the family "couldn't go through civil court." And she restated her arguments that the compensation scheme violated her constitutional rights.

At the end of the July hearing, the hearing chair clarified Burke's status in asserting the claim:

> CHAIR SLODOWY: Thank you. Ms. Burke, are you . . . representing the estate of Abigail? Have you ever been appointed, like, an executor of the estate or —
>
> MS. BURKE: Betty was taking care of the estate to begin with.
>
> [BETTY]: Oh, Nate was.
>
> BURKE: The father [Burke's ex-husband].
>
> CHAIR: Okay. So . . . you're appearing on behalf of — individually —
>
> BURKE: Yes.
>
> CHAIR: — on yourself, not on behalf of the estate, as like an executor.
>
> BURKE: On behalf of the estate, I suppose. I mean, that's how I think it started. But I'm not —
>
> CHAIR: I'm understanding —
>
> BURKE: I'm in no contact with my ex.
>
> CHAIR: Okay. So you're appearing individually.
>
> BURKE: I guess you're right, individually —
>
> CHAIR: Okay.
>
> BURKE: — not as a mother [sic].

In its written decision the Board affirmed its oral order excluding the evidence and determined that Burke's claim was not untimely. It agreed with Raven Electric that Burke did not qualify for any compensation benefits, writing that she "simply has no remedy under the Act." Accordingly the Board dismissed her claim "for lack of a statutory remedy."

Burke appealed to the Commission. She again made constitutional claims

but also argued she should be able to sue Raven Electric under the Defective Machinery Act[5] because Raven Electric had supplied Caudle with a voltage meter that was inadequate to accurately detect the presence of electric current. She noted amendments to the Workers' Compensation Act in 2004, which she said "took away a death victim's family's right to sue in civil court [for] a wrongful death in the work place." Burke contended that the Act effectively gave her and other family members nothing for Caudle's life, observing that the funeral home, not the family, received the only benefits available under the Act. Burke emphasized the impact of Caudle's death on her own earning capacity and questioned the Act's dependency definition.

The Commission, like the Board, concluded it had no jurisdiction over constitutional questions. The Commission cited cases in which this court had decided that (1) the Act did not violate the equal protection rights of the estates of unmarried workers who died on the job leaving no dependents[6] and (2) the Defective Machinery Act did not apply to cases in which the Act also applied.[7] The Commission upheld the Board's decision that Burke was not entitled to further benefits under the Act.

After the Commission affirmed the Board's decision, Raven Electric asked the Commission to order Burke to pay its attorney's fees. Raven Electric argued that Burke was not an injured worker and was thus not covered by the statutory provision shielding injured workers from having to pay attorney's fees in Commission appeals. The Commission agreed and ordered Burke to pay $11,203.20 in attorney's fees and costs. Burke appeals.

---

[5] AS 23.25.010-.040.

[6] *Taylor v. Se.-Harrison W. Corp.*, 694 P.2d 1160, 1162-63 (Alaska 1985).

[7] *Gordon v. Burgess Constr. Co.*, 425 P.2d 602, 605 (Alaska 1967).

## III. STANDARD OF REVIEW

In an appeal from the Alaska Workers' Compensation Appeals Commission, we review the Commission's decision.[8] We apply our independent judgment to questions of "statutory interpretation requiring the application and analysis of various canons of statutory construction."[9] We also apply our independent judgment to questions of constitutional law.[10]

## IV. DISCUSSION

The workers' compensation system consists of a trade-off, sometimes called the "grand bargain,"[11] in which workers give up their right to sue in tort for damages for a work-related injury or death in exchange for limited but certain benefits, and employers agree to pay the limited benefits regardless of their own fault in causing the injury or death.[12] This system has been in place in the United States for over a century and has

---

[8]     *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 (Alaska 2014) (citing *Shehata v. Salvation Army*, 225 P.3d 1106, 1113 (Alaska 2010)).

[9]     *ARCTEC Servs. v. Cummings*, 295 P.3d 916, 920 (Alaska 2013) (quoting *Tesoro Alaska Petrol. Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903-04 (Alaska 1987)).

[10]     *Fraternal Order of Eagles v. City & Borough of Juneau*, 254 P.3d 348, 352 (Alaska 2011).

[11]     *See Baker v. Bridgestone/Firestone*, 872 N.W.2d 672, 676 (Iowa 2015) (describing "grand bargain removing workers' compensation matters from the civil justice system").

[12]     *Taylor v. Se.-Harrison W. Corp.*, 694 P.2d 1160, 1162 (Alaska 1985) ("[T]he Act serves 'the goal of securing adequate compensation for injured employees without the expense and delay inherent in [ordinary civil litigation requiring] a determination of fault as between the employee and employer.' " (second alteration in original) (quoting *Arctic Structures, Inc. v. Wedmore*, 605 P.2d 426, 437 (Alaska

withstood constitutional challenge.[13] New York's workers' compensation statute was found constitutional under the United States Constitution in 1917.[14] New York's compensation law became the model for the federal Longshore and Harbor Workers' Compensation Act,[15] which in turn served as the model for Alaska's Act.[16]

As *Larson's Workers' Compensation Law* observes, workers' compensation in the United States is similar to "social insurance" because "the right to benefits and amount of benefits are based largely on a social theory of providing support and preventing destitution, rather than settling accounts between two individuals according to their personal deserts or blame," even though the funding mechanism for the system is "unilateral employer liability."[17] *Larson's* observes that "[a] compensation system, unlike a tort recovery, does not pretend to restore to the claimant what he or she has lost."[18] Instead, the goal of workers' compensation is to "give[] claimant a sum which, added to his or her remaining earning ability, if any, will presumably enable claimant to

---

[12] (...continued) 1979))).

[13] *See* 1 ARTHUR LARSON ET AL., LARSON'S WORKERS' COMPENSATION LAW § 2.07 (Matthew Bender, Rev. Ed. 2015) (describing history of workers' compensation in the United States).

[14] *N.Y. Cent. R.R. Co. v. White*, 243 U.S. 188, 208 (1917).

[15] *Bell v. O'Hearne*, 284 F.2d 777, 779 (4th Cir. 1960).

[16] *McCarter v. Alaska Nat'l Ins. Co.*, 883 P.2d 986, 990 n.5 (Alaska 1994).

[17] 1 ARTHUR LARSON ET AL., *supra* note 13, § 1.02.

[18] *Id.* § 1.03[5].

exist without being a burden to others."[19]

The basic provisions of this bargain in Alaska's Act are contained in AS 23.30.045 and .055. Under AS 23.30.045 an employer is required to provide workers' compensation coverage for employees, and in return, AS 23.30.055 makes workers' compensation the employee's exclusive remedy. Most Alaska employers are required to provide workers' compensation.[20] The only exceptions to the exclusive remedy provision are failure to insure[21] and intentional torts.[22] To encourage employers to keep their part of the "grand bargain" the Act allows employees to sue in tort those employers who do not "secure payment of compensation" under the Act and takes from noncompliant employers certain tort defenses.[23] The exclusive remedy sections of the Act were amended in 2004 to expand potential liability for workers' compensation "up the chain of contracts"[24] to project owners and general contractors[25] and at the same time to extend the exclusive remedy shield to all those "up the chain" who are now potentially

---

[19] *Id.*

[20] Alaska Statute 23.30.230 sets out a list of jobs that are not covered by the Act. The Act has additional provisions governing sole proprietors, partners, corporate officers, and members of limited liability companies. AS 23.30.239-.240.

[21] AS 23.30.055.

[22] *Elliott v. Brown*, 569 P.2d 1323, 1327 (Alaska 1977) (holding that when coworker commits an intentional tort, exclusive liability does not foreclose an action against the coworker).

[23] AS 23.30.055.

[24] Minutes, Sen. Labor & Commerce Comm. Hearing on S.B. 323, 23d Leg., 2d Sess. 20-21 (Mar. 4, 2004) (statement of Sen. Ralph Seekins, sponsor), http://www.legis.state.ak.us/pdf/23/M/SL!C2004-03-041332.PDF.

[25] AS 23.30.045.

liable for workers' compensation.[26]  We held in 2009 that the 2004 amendments were constitutional, reasoning that the amendments furthered the goal of providing workers' compensation at a reasonable cost to employers by expanding those entities who are required to secure coverage and giving those who are now potentially liable the protection of the exclusive remedy.[27]

Burke, representing herself, has raised constitutional arguments about both the 2004 amendments and the underlying exclusive remedy provisions of the Act.  Some of her arguments are related to her own potential status as a beneficiary while others would more properly be asserted by Caudle's estate.  Burke's briefing also suggests at times that she was the personal representative of the estate.  But because further review of the record demonstrates that Burke was not a personal representative of the estate, we decline to reach the merits of those issues, and we address the merits of only those claims that Burke asserted on her own behalf.[28]

A.    **The Exclusive Remedy Provision Does Not Violate Burke's Constitutional Rights.**

Burke argues that the exclusive remedy provision of the Act violates her rights to due process and equal protection under the Alaska and U.S. Constitutions and also violates her right to privacy under the Alaska Constitution.  She contends that by failing to provide more compensation for Caudle's death, the Act "treat[s] [Caudle's] life

---

[26]    AS 23.30.055.

[27]    *Schiel v. Union Oil Co. of Cal.*, 219 P.3d 1025, 1034-35 (Alaska 2009).

[28]    We asked the State of Alaska and Eric Croft, who had earlier requested permission to file an amicus brief, to brief as amici constitutional and procedural issues related to the 2004 amendments due to Burke's self-represented status.  While we do not reach the merits of the constitutional issues addressed in their briefing, we thank them for their participation.

as if she was worth a piece of dirt" and violates Burke's due process rights because, through the Act, the State "has taken away [her] right for justice and compensation" for her daughter's death and left no means for her to redress it. In her view this is a deprivation of life, liberty, or property without due process of law.

In *Wright v. Action Vending Co.* we considered challenges to the exclusive remedy provision brought by the spouse of an injured worker when the superior court determined that provision barred a spouse's loss of consortium action against the employer.[29] We construed the Act as barring not only actions by the injured worker individually but also actions that "arise[] out of, and cannot exist without, the . . . core of activity" covered by the Act.[30] In *Wright*, quoting a federal court, we observed that "the keystone" of the workers' compensation system "was the exclusiveness of the remedy."[31] The bargain underlying workers' compensation is

> a balancing of the sacrifices and gains of both employees and employers, in which the former relinquished whatever rights they had at common law in exchange for a sure recovery under the compensation statutes, while the employers on their part, in accepting a definite and exclusive liability, assumed an added cost of operation which in time could be actuari[al]ly measured and accurately predicted.[32]

"[A]nything that tends to erode the exclusiveness of either the liability or the recovery

---

[29] 544 P.2d 82 (Alaska 1975).

[30] *Id.* at 86.

[31] *Id.* at 84 (quoting *Smither & Co. v. Coles*, 242 F.2d 220, 222 (D.C. Cir. 1957)).

[32] *Id.* at 85 (quoting *Smither & Co.*, 242 F.2d at 222).

strikes at the very foundation of" the bargain underlying workers' compensation.[33]

Like the loss of consortium claim in *Wright*, Burke's personal claims arise "on account of the injury or death"[34] covered by the Act and are barred by the exclusive remedy provision. Parents are listed, along with spouses, "dependents," and "next of kin," as those whose actions against an employer are barred by the Act.[35] To be entitled to workers' compensation death benefits, a parent must show dependency at the time of the child's death.[36]

Burke argues that the Act's failure to provide for her potential future dependency on Caudle violates her right to equal protection. She also contends that requiring her to show financial dependency violates her right to privacy by requiring production of income tax returns and deprives her of due process by failing to compensate her and other family members for their emotional, as opposed to financial, dependence on Caudle. The Board did not require Burke to produce her income tax information, and Burke did not try to prove that she was economically dependent on Caudle at the time of Caudle's death, so questions related to privacy are not at issue on appeal. Damage to emotional ties is a type of noneconomic damages,[37] and the Act does

---

[33]     *Id.* (quoting *Smither & Co.*, 242 F.2d at 222).

[34]     *See* AS 23.30.055 (providing that workers' compensation is "exclusive and in place of all other liability of the employer . . . on account of the injury or death").

[35]     *Id.*

[36]     AS 23.30.215(a)(4), (c).

[37]     *Cf. Hibpshman v. Prudhoe Bay Supply, Inc.*, 734 P.2d 991, 994 (Alaska 1987) (recognizing that minor children have independent claim for loss of consortium when parent is injured).

not provide noneconomic damages to either injured workers or their families.[38]  Before there can be a violation of due process, a person must have a substantive right that entitles her to a certain level of process in order to protect that right.[39]  But Burke does not have such a right.  The legislature has limited the substantive rights available to nondependent family members of workers who die in work-related accidents, and the claims processing mechanism in the Act provided Burke an opportunity to challenge the constitutionality of the Act with respect to her own rights.  Her argument that the Act violates her due process rights is misplaced.

With regard to Burke's argument about future dependency, we rejected a similar argument in the wrongful death context in *In re Estate of Pushruk*.[40]  There we held that a mother needed to show dependency at the time of her adult child's death to be considered a beneficiary under the wrongful death statute.[41]  We observed that to hold otherwise would require undue speculation because a fact finder would have to speculate twice:  "first, as to the facts and circumstances which might create a relationship of dependency in the future; and, second, as to the amount of damages which would flow

---

[38]    *See C.J. v. State, Dep't of Corr.*, 151 P.3d 373, 381 (Alaska 2006) (observing that the workers' compensation system "essentially eliminat[es]" noneconomic damages).  Additionally, the wrongful death statute does not allow recovery of noneconomic damages when a decedent has no dependents at the time of death.  AS 09.55.580(a); *Sowinski v. Walker*, 198 P.3d 1134, 1161 (Alaska 2008).

[39]    *See Alex H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 389 P.3d 35, 50 (Alaska 2017).

[40]    562 P.2d 329 (Alaska 1977).

[41]    *Id.* at 331-32.

from the loss of this hypothesized relationship."[42]

Unlike the wrongful death statute, the Act explicitly limits statutory benefits to parents who are "dependent upon" their child at the time of the child's death.[43] Basing statutory compensation benefits on dependency at the time of a child's death does not violate the equal protection rights of parents who may in the future depend financially on their children. For a viable equal protection claim to exist, similarly situated groups must be treated differently: "[w]here there is no unequal treatment, there can be no violation of the right to equal protection of the law."[44] The legal conclusion that "two classes are not similarly situated necessarily implies that the different legal treatment of the two classes is justified by the differences between the two classes."[45] We reach this legal conclusion through application "in shorthand" of our traditional equal protection analysis to the legislature's creation of the classification.[46] We consider "whether a legitimate reason for disparate treatment exists, and, given a legitimate reason, whether the enactment creating the classification bears a fair and substantial relationship to that

---

[42]    *Id.* at 332.

[43]    AS 23.30.215(a)(4), (c).

[44]    *Glover v. State, Dep't of Transp., Alaska Marine Highway Sys.*, 175 P.3d 1240, 1257 (Alaska 2008) (quoting *Matanuska-Susitna Borough Sch. Dist. v. State*, 931 P.2d 391, 397 (Alaska 1997)).

[45]    *Lauth v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 12 P.3d 181, 187 (Alaska 2000) (quoting *Shepherd v. Dep't of Fish & Game*, 897 P.2d 33, 44 n.12 (Alaska 1995)).

[46]    *See id.* (quoting *Shepherd*, 897 P.2d at 44 n.12); *see also Gonzales v. Safeway Stores, Inc.*, 882 P.2d 389, 396 (Alaska 1994) (explaining shorthand analysis and application to legislative classifications).

reason."[47]  As applied to the classification here, parents who depend financially on their child at the time of the child's death lose a present source of income, which workers' compensation is designed to replace in part.[48]  Parents who may depend on their child in the future do not lose the present source of income workers' compensation replaces, and they might never have become dependent on the child in any event.  Because the two groups of parents are not similarly situated, the different treatment Burke questions is not constitutionally impermissible.

Burke also argues that because of the 2004 amendments to the Act, which expanded the entities deemed to be "employers" for purposes of the exclusive remedy provision, she is now barred from bringing a lawsuit against anyone who might be liable for Caudle's death.  The list of those she views as responsible for Caudle's death includes not only Raven Electric but also some of Caudle's co-employees, the general contractor, and the building owner.  She contends the amendments violate her right to due process because the amendments to the Act "took away [her] right to sue in [c]ivil [c]ourt for justice."  But Burke did not have a right to bring such an action even before the 2004 amendments.  Both the Act and the wrongful death statute require the parent of an adult child to be dependent on the child in order to be a beneficiary.[49]  Because Burke was not dependent on Caudle, Burke is not a beneficiary.  When there is no statutory beneficiary, a wrongful death action is brought for the benefit of the estate

---

[47]    *Gonzales*, 882 P.2d at 396 (citing *State, Dep't of Revenue v. Cosio*, 858 P.2d 621, 629 (Alaska 1993)).

[48]    *See Taylor v. Se.-Harrison W. Corp.*, 694 P.2d 1160, 1162 (Alaska 1985) (explaining that legislature recognized "the need to replace the income that provided support for those dependent upon the deceased worker" in giving more benefits to estates of deceased workers with dependents).

[49]    AS 09.55.580(a); AS 23.30.215(a).

alone.[50] Thus in this case, the real party in interest in both claims is Caudle's estate.[51] Because Burke is not the personal representative of Caudle's estate and is not the real party in interest in asserting any rights with regard to the estate, we decline to reach any questions about the effect of the 2004 amendments on the rights of the estates of injured workers who die without dependents.

**B.    The Exclusive Remedy Provision Bars A Lawsuit Under The Defective Machinery Act.**

Burke argues that the Defective Machinery Act[52] should apply to her case because Raven Electric supplied Caudle with the wrong type of equipment, a noncontact voltage meter. She contends that the voltage meter was defective in the sense that it did not work for its intended purpose because it did not show that a wire was energized when in fact it was. The Commission addressed this argument in a footnote, citing our precedent about the interaction between the Workers' Compensation Act and the Defective Machinery Act and observing that "a claim against the employer that is not based on the . . . Act must be addressed to the courts rather than the . . . Board."

We considered the interaction of the Defective Machinery Act and the exclusive remedy provision of the Act in two cases: *Gordon v. Burgess Construction*

---

[50]    *Kulawik v. ERA Jet Alaska*, 820 P.2d 627, 635 (Alaska 1991) (noting "mutually exclusive dichotomy between estate recovery and beneficiary recovery" (citing *In re Estate of Pushruk*, 562 P.2d 329, 331 (Alaska 1977))).

[51]    *In re Pushruk*, 562 P.2d at 331 ("[I]f the deceased is not survived by the beneficiaries named in the [wrongful death] statute, the personal representative is the real party in interest in the wrongful death action.").

[52]    AS 23.25.010-.040. Unlike the Workers' Compensation Act and the wrongful death statute, the Defective Machinery Act does not require a parent to show dependency on an adult child to be a statutory beneficiary. AS 23.25.010.

*Co.*[53] and *Haman v. Allied Concrete Products, Inc.*[54] We harmonized the Defective Machinery Act and the exclusive remedy provision by applying the Defective Machinery Act only to those occupations that are exempt from the coverage of the Act, such as "part time baby sitters, cleaning persons, harvest help, and similar part time or transient help."[55] In *Gordon* we rejected an argument that "the Alaska Legislature, by continuing the Defective Machinery Act in existence after enactment of the . . . Act, evidenced its intent to exclude defective, dangerous machinery from the coverage of the . . . Act in order to coerce employers to furnish safe machinery."[56] And in *Haman* we observed that permitting an exception to the exclusive remedy provision when an accident was caused by inadequate or defective machinery "would seriously undermine, if not engulf, the comprehensiveness" of the workers' compensation system.[57]

Burke has not shown that the rule we adopted in *Gordon* "was originally erroneous or is no longer sound because of changed conditions."[58] We decline to overrule our precedent, and because it is uncontested that Caudle's occupation was covered by the Act, the exclusive remedy provision bars a suit against Raven Electric under the Defective Machinery Act.

---

[53]    425 P.2d 602 (Alaska 1967).

[54]    495 P.2d 531 (Alaska 1972).

[55]    *Gordon*, 425 P.2d at 605.  Those exemptions (and others) remain in place. *See* AS 23.30.230.

[56]    425 P.2d at 605.

[57]    495 P.2d at 535.

[58]    *See State v. Carlin*, 249 P.3d 752, 757-58 (Alaska 2011) (setting out tests for overruling precedent).

## C. The Board Did Not Err In Its Procedural Decisions.

As noted earlier, Burke submitted a copy of the AKOSH report with a Board form prior to the hearing. Burke's purpose in proffering the AKOSH report was in part to support her argument that Raven Electric had been grossly negligent. The Board panel who heard the case excluded it "for purposes of [the July] hearing," but the Board hearing chair, recognizing that Burke was making a constitutional challenge, told her the AKOSH file was "not being . . . stricken from the record" and was "part of the record of the case no matter what." Raven Electric argues the Board's exclusion of the file was correct, while Burke maintains the documents were relevant to her Defective Machinery Act claim.

A Board regulation gives the Board the authority to determine which documents it will consider when making its decision.[59] Because the Board does not have jurisdiction to decide constitutional issues and because benefits under the Act are awarded regardless of fault, the Board appropriately declined to consider the AKOSH file in making its decision related to the Act but not striking it from the record.

Burke also contends the Board erred in denying her request for more time to prepare for the hearing. According to Burke, Board staff told her she would have two years from the time she filed the workers' compensation claim to prepare for a hearing. She argues that had she been given more time to prepare, she would have been able to subpoena witnesses to testify about worker safety and could have gathered more evidence from state agencies about the accident. She also asserts that she "[w]ould have had more time to read and research more legal information."

Raven Electric filed an affidavit of readiness for hearing on its petition to dismiss shortly after the Board's March 2014 interlocutory order and about nine months

---

[59]    8 Alaska Administrative Code (AAC) 45.120(f) (2011).

after Burke filed her claim. Burke opposed setting a hearing, but the Board set a July 2014 hearing date.

The Board can set a hearing on a claim or petition either on its own motion or after receipt of an affidavit of readiness for hearing.[60] Because Burke filed an opposition, the Board was required to hold a prehearing conference,[61] which it did. Regulations give the Board some discretion in scheduling the hearing.[62] We review an administrative agency's application of its own regulations to a particular case to determine "whether the agency's decision was arbitrary, unreasonable, or an abuse of discretion."[63]

We conclude that scheduling the hearing over Burke's objection was not improper. The evidence Burke wanted to admit was not relevant to the issues the Board could decide: Burke sought to admit evidence related to negligent conduct that she said led to Caudle's death, but the Act creates a system of payment without regard to fault. Absent the possibility of a deliberate intent to injure a worker — and Burke agrees that Raven Electric did not intend to hurt Caudle — an employer's negligence is irrelevant to a workers' compensation proceeding.[64] And Burke had more than three months after

---

[60]    8 AAC 45.060(e) (2017). The two-year deadline Burke alludes to is most likely related to AS 23.30.110(c), which authorizes denial of a claim when the claimant does not file an affidavit of readiness for hearing within two years of an employer's controversion. This statute does not prohibit an earlier hearing on a claim.

[61]    8 AAC 45.070(c) (2011).

[62]    8 AAC 45.070(a), (c).

[63]    *Griffiths v. Andy's Body & Frame, Inc.*, 165 P.3d 619, 623 (Alaska 2007).

[64]    *See Fenner v. Municipality of Anchorage*, 53 P.3d 573, 576-77 (Alaska 2002) (reaffirming precedent holding that employer must have specific intent to injure
(continued...)

-21-                                                              7241

the prehearing conference to prepare for a late-July hearing. In sum the Board did not abuse its discretion in its procedural decisions.[65]

**D.    The Commission Erred In Awarding Attorney's Fees To Raven Electric.**

After winning the Commission appeal Raven Electric asked for an award of full reasonable attorney's fees as the successful party, arguing that Burke did not qualify for the protection for injured workers set out in the Act. The Commission agreed and ordered Burke to pay $11,203.20 in costs and fees to Raven Electric.

On appeal Burke asserts she should not have to pay attorney's fees because the injured worker in this case is dead and unable to fight for justice on her own behalf. Raven Electric responds that the Commission correctly determined Burke was not entitled to the protection against attorney's fees the statute gives to injured workers. Raven Electric contends that because Burke disavowed any financial dependence on Caudle at the time of Caudle's death, the Commission correctly awarded it fees. Raven Electric relies on *State, Division of Workers' Compensation v. Titan Enterprises, LLC*[66] in making its argument.

This issue is one of statutory construction. Alaska Statute 23.30.008(d) provides that the Commission should award attorney's fees and costs to the prevailing party in a Commission appeal but "may not make an award of attorney['s] fees against an injured worker" absent a finding "that the worker's position on appeal was frivolous

_____

[64]    (...continued)
employee to be within intentional tort exception to exclusive remedy provision).

[65]    Burke makes several other arguments related to the Act. We do not find them persuasive and do not address them here.

[66]    338 P.3d 316 (Alaska 2014).

or unreasonable or the appeal was taken in bad faith."[67]

Although we have construed AS 23.30.008(d) several times,[68] we have not addressed the meaning of *injured worker*.[69] When interpreting a statute, we consider the meaning of the statutory language, the legislative history, and the purpose of the statute, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[70] We consider all parts of a statute together and presume the legislature is aware of other statutory sections on the same subject as well as prior cases when enacting legislation.[71]

There is no legislative definition of *injured worker*, and the term is only used sporadically in the Act.[72] At times *injured worker* is used in the same sentence as

---

[67]  AS 23.30.008(d).

[68]  *See Titan Enters., LLC*, 338 P.3d at 321-23 (interpreting statute when two nonclaimants were involved in appeal); *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1181-82 (Alaska 2014) (reversing refusal to award fees when claimant's attorney prevailed on some issues); *Lewis-Walunga v. Municipality of Anchorage*, 249 P.3d 1063, 1068 (Alaska 2011) (holding that "a claimant is a successful party in an appeal to the Commission when the claimant prevails on a significant issue in the appeal"); *Shehata v. Salvation Army*, 225 P.3d 1106, 1119-20 (Alaska 2010) (reversing fee award for Commission appeal because claimant's appeal was not frivolous).

[69]  In *Shehata v. Salvation Army*, the only case in which we considered the shield against paying fees for a Commission appeal, the employer conceded Shehata "was an injured worker because he had a compensable injury." 225 P.3d at 1119.

[70]  *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1133 (Alaska 2009) (citing *Enders v. Parker*, 66 P.3d 11, 13-14 (Alaska 2003)).

[71]  *Young v. Embley*, 143 P.3d 936, 947 (Alaska 2006).

[72]  *See, e.g.*, AS 23.30.001, .008, .041, .225.

*employee* to refer to the same person.[73]  We observed in *Lewis-Walunga v. Municipality of Anchorage* that "[t]here is little legislative history about AS 23.30.008(d), but what there is suggests that the legislature intended Commission attorney's fees awards to follow the same rules as appellate attorney's fees awards in the courts."[74]  Appellate attorney's fees in the courts were governed by former Alaska Appellate Rule 508(g) in 2005 when the Commission was created.[75]  Former Rule 508(g)(1) prohibited a court from awarding costs or attorney's fees against a "claimant" unless "the claimant's position was frivolous, unreasonable, or taken in bad faith."[76]

The key difference between former Rule 508(g)(1) and AS 23.30.008(d) is that the statute uses the term *injured worker* rather than *claimant*.  Nothing in the legislative history manifests an intent to narrow those who are shielded from an award of attorney's fees; to the contrary, the scant legislative history "suggests that the legislature intended Commission attorney's fees awards to follow the same rules as appellate attorney's fees awards in the courts."[77]

---

[73]  *See, e.g.*, AS 23.30.225(c) ("If employer contributions to a qualified pension . . . plan have been included in the determination of gross earnings and the *employee* is receiving pension . . . payments, weekly compensation benefits payable under this chapter shall be reduced by the amount paid or payable to the *injured worker* under the plan . . . ." (emphasis added)).

[74]  249 P.3d 1063, 1067 (Alaska 2011) (citing STATE OF ALASKA, DEP'T OF LAW, SECTION BY SECTION ANALYSIS OF SB 130 at 7 (Mar. 3, 2005)).

[75]  Ch. 10, § 8, FSSLA 2005; former Alaska R. App. P. 508(g)(1) (2005).

[76]  Former Alaska R. App. P. 508(g)(1).  The language of AS 23.30.008(d) is similar to former Rule 508(g)(2) in that the statute, like our former rule, allows an award of full reasonable attorney's fees.

[77]  *Lewis-Walunga*, 249 P.3d at 1067 (citing STATE OF ALASKA, DEP'T OF

(continued...)

Furthermore, when the legislature created the Commission, it did not change the restrictions it had placed on payment of attorney's fees for legal services "with respect to *a claim*."[78] As we discussed in *Titan Enterprises*, "[a]ttorneys are prohibited from receiving fees for representing *claimants* unless the Board awards them fees when claimants are successful."[79] But claimants can include others in addition to injured workers: Alaska Statute 23.30.030(4) requires a workers' compensation insurer to "promptly pay to the person entitled to them the benefits conferred by [the Act]," and we have construed this subsection as meaning that an employer is directly liable to those persons.[80] A Board regulation permits "person[s] other than the employee" to file a claim; with some exceptions, those who file their own claims must join the employee as a party.[81] But because the statutory restrictions on fee arrangements do not distinguish between injured workers and others to whom payment may be required, claimants, not just injured workers, are entitled to the protection of the shield against an award of attorney's fees.

*Titan Enterprises* is not to the contrary. There we construed

---

[77]     (...continued)
LAW, SECTION BY SECTION ANALYSIS OF SB 130 at 7 (Mar. 3, 2005)).

[78]     AS 23.30.145, .260 (emphasis added).

[79]     *State, Div. of Workers' Comp. v. Titan Enters., LLC*, 338 P.3d 316, 323 (Alaska 2014) (emphasis added).

[80]     *See Barrington v. Alaska Commc'ns Sys. Grp., Inc.*, 198 P.3d 1122, 1128 (Alaska 2008) (quoting *Sherrod v. Municipality of Anchorage*, 803 P.2d 874, 875 (Alaska 1990)).

[81]     8 AAC 45.040(a) (2011).

AS 23.30.008(d) as permitting an award of attorney's fees to either party in an appeal.[82] But in allowing the Commission to consider the relative success of two nonclaimants when it awarded fees, we observed that AS 23.30.008(d) provided no shield to "nonclaimants who lose a significant issue in a Commission appeal."[83] We also considered the Act's restrictions on fee arrangements to explain the difference in treatment of nonclaimants and claimants.[84]

Burke asserted constitutional claims as a possible beneficiary of a deceased worker as well as claims more properly made by Caudle's estate.[85] She was thus a claimant under the Act. As such, she is entitled to the protection afforded other claimants against having to pay attorney's fees to Raven Electric unless her position on appeal was frivolous, unreasonable, or the appeal was taken in bad faith. We hold that it was not.

To be frivolous or unreasonable a workers' compensation claimant's appeal must have no basis in law or fact.[86] In its Commission brief Raven Electric contended

---

[82] *Titan Enters., LLC*, 338 P.3d at 321.

[83] *Id.* at 321-22.

[84] *Id.* at 322-23.

[85] It was only at the end of the July 2014 hearing that the Board chair clarified Burke's status.

[86] *See Shehata v. Salvation Army*, 225 P.3d 1106, 1119 (Alaska 2010) (holding that legal issue raised in appeal "had a basis in law and fact" and was not frivolous or unreasonable). This standard is similar to one used in federal civil rights litigation. *See Okopu v. Cty. of Suffolk*, 123 F. Supp. 3d 404, 411 (E.D.N.Y. 2015) (holding in federal civil rights suit that "[a] claim is frivolous where it lacks an arguable basis either in law or in fact" (alteration in original) (quoting *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004))).

(continued...)

that Burke's appeal was frivolous and unreasonable because the positions she advocated came within our precedent.[87]  Because precedent can be, and sometimes is, overruled,[88] asserting a position that is contrary to controlling precedent is not per se unreasonable or frivolous.

Pleadings of self-represented litigants are held to less stringent standards than those of attorneys.[89]  The Board and the Commission clearly understood Burke was raising constitutional claims, and both administrative bodies told her they lacked jurisdiction to decide those issues.  Raven Electric acknowledged at oral argument before us that Burke used an appropriate process to assert claims related to the constitutionality

---

[86]     (...continued)
Raven Electric has never asserted that Burke filed her claim in bad faith. In fact it acknowledges that "Burke is acting as the personal representative of Caudle's memory and seeking justice."

[87]     Raven Electric relied only on *DeNardo v. Cutler*, 167 P.3d 674 (Alaska 2007), to support this argument.  But *DeNardo* did not hold that advocating a position contrary to precedent was unreasonable and frivolous:  there we upheld an award of fees against an experienced self-represented litigant who had, after losing several similar lawsuits in the past, "persisted in [suing a judge] despite [the litigant's] apparent understanding of the law."  *Id.* at 680.

[88]     *See, e.g.*, *State v. Carlin*, 249 P.3d 752, 759-60 (Alaska 2011), *overruling Hartwell v. State*, 423 P.2d 282 (Alaska 1967).

[89]     *DeNardo v. Calista Corp.*, 111 P.3d 326, 330-31 (Alaska 2005).

of the Act. Here, the core position Burke advanced — that the Act violates the constitutional rights of estates of workers who have no dependents when they die in work-related accidents — was adopted at one point by the New Hampshire Supreme Court[90] and was endorsed more recently by dissenting justices in Montana.[91]

Given Burke's self-represented status and the acknowledgment of both the administrative agencies and the employer that only this court had jurisdiction to decide Burke's constitutional arguments, we cannot say that her appeal to the Commission — a prerequisite for review by this court — was unreasonable or frivolous.

## V.    CONCLUSION

We HOLD that the Alaska Workers' Compensation Act does not violate Burke's rights to equal protection or due process. We AFFIRM the Commission's decision that Burke is not entitled to benefits under the Act. We REVERSE the Commission's award of attorney's fees to Raven Electric.

---

[90]    *Park v. Rockwell Int'l Corp.*, 436 A.2d 1136, 1139 (N.H. 1981), *overruled by Alonzi v. Ne. Generation Servs. Co.*, 940 A.2d 1153, 1162-63 (N.H. 2008).

[91]    *Walters v. Flathead Concrete Prods., Inc.*, 249 P.3d 913, 922 (Mont. 2011) (Wheat, J., dissenting); *id.* at 923 (Nelson, J., dissenting).